UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY SPINE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>AETNA INC.<br><br>Defendant. | Civ. No. 17-8160 (KM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

This litigation is one of many in which out-of-network health care providers, purporting to sue on behalf of their patients, have sought to be reimbursed at (or at least closer to) in-network rates. Plaintiff University Spine Center ("University Spine"), an out-of-network provider, brings this Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, action against defendant Aetna, Inc. ("Aetna"), the claims administrator for the health plan of University Spine's patient. University Spine sues as assignee of a patient, L.K., and seeks to recover $133,320.98.

Aetna now moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief may be granted.

For the reasons stated herein, I will deny the motion to dismiss.

1

## I. Background[1]

### A. Procedural History

The Complaint was originally filed by University Spine in New Jersey Superior Court, Passaic County, on August 30, 2017. (Compl.) The Complaint contains three claims against Aetna: (1) breach of contract; (2) failure to make all payments pursuant to the member's plan under ERISA; and (3) breach of fiduciary duty under ERISA. (*Id.* at ¶¶ 17-40).

On October 12, 2017, Aetna filed a Notice of Removal to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. The Notice states three grounds for removal: "(1) Count II and Count III explicitly allege claims that arise under federal law; (2) the parties are completely diverse and the amount in controversy exceeds the jurisdictional threshold; and (3) Count I is completely preempted by ERISA Section 502(a)." (*Id.* at ¶ 5). (*See also id.* at ¶¶ 6-8.) Aetna attached three Exhibits to the Notice, including the Complaint and its corresponding Exhibits. (ECF no. 1-1).

One week later, on October 19, 2017, Aetna filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint with prejudice for failure to state a claim. (Def. Brf.)

On November 6, 2017, University Spine filed an opposition to Aetna's motion to dismiss. (Pl. Brf.) One week later, on November 13, 2017, Aetna filed a reply. (ECF no. 7).

---

[1] Certain key items are abbreviated as follows:

Compl.= Complaint, ECF no. 1-1, Exh. 1

Notice of Removal= Notice of Removal from New Jersey Superior Court, Passaic County, ECF no. 1

Def. Brf.= Brief of defendant Aetna in support of motion to dismiss, ECF no. 3-1

Pl. Brf.= Brief of plaintiff University Spine in opposition to motion to dismiss, ECF no. 5

Def. Reply= Reply Brief of defendant Aetna, ECF no. 7

2

On December 21, 2017, Aetna filed a notice of supplemental authority in support of its pending motion to dismiss. (ECF no. 10 (attaching ECF no. 10-1, a copy of *Univ. Spine Ctr. v. Aetna, Inc.*, No. CV 17-7825 (JLL), 2017 WL 6514663 (D.N.J. Dec. 20, 2017)).

The parties agree that the case is governed by ERISA. Therefore, University Spine has agreed to voluntarily dismiss Count I, a state law breach of contract claim. *See* (Pl. Brf. 3). Accordingly, I will consider Aetna's motion to dismiss as to the ERISA-related claims, Counts 2 and 3.

### B. Facts[2]

On December 30, 2016, University Spine provided medical services to L.K. (Compl. ¶¶ 3-4). The services consisted of a spinal surgery and related procedures. (*Id.* at ¶ 5).

University Spine received an Assignment of Benefits from L.K. (Compl., Exh. B). The Assignment of Benefits[3] form states, in relevant part:

> I, the undersigned, certify that I (or my dependent/s) have insurance coverage with _____ and assign directly to University Spine Center, all insurance benefits, if any, otherwise payable to me for the services rendered. I understand that I am financially responsible for all charges, whether or not paid by insurance. I hereby authorize the doctor to release all information necessary to secure the payment of benefits. I authorize the use of this signature on all insurance submissions.
>
> **Responsible Party Signature:** [redacted] **Relationship:** self
> **Date:** [redacted]

(*Id.*)

At the time medical services were provided, L.K. was a member of Aetna Choice POS II, a self-funded health benefits plan. *See* (ECF no. 3-3, ¶ 3; ECF no. 3-4, Exh. 1; Def. Brf. 3). Aetna is the Claims Administrator for the Plan.

---

2   For the purposes of this 12(b)(6) motion to dismiss, I will assume the allegations in the Complaint are true. *See* Section II, *infra*.

3   The Assignment of Benefits is actually titled "Assignment and Release."

(Compl. ¶ 14). The terms of the Plan are set forth in a booklet entitled "What Your Plan Covers and How Benefits are Paid." (ECF no. 3-4, Exh. A). As stated above, the parties do not dispute that the Plan is governed by ERISA.

University Spine is an out-of-network health care provider as to the Plan. It sues pursuant to the Assignment of Benefits. (Compl. ¶¶ 26, 32). However, the Plan includes an anti-assignment clause. (ECF no. 3-4, Exh. A at 59). In a section entitled "Assignments," it provides as follows: "Coverage and your rights under this **Aetna** medical benefits plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding." *Id.* (emphasis in original).

As assignee, University Spine submitted a Health Insurance Claim Form to Aetna for the services it provided to L.K. (Compl. ¶ 7)(citing Exh. C). It requested reimbursement in the amount of $137,713.00. (*Id.*) However, only $4,392.02 has been reimbursed by Aetna. (*Id.* at ¶ 8).

In a letter dated February 28, 2017, University Spine requested that Aetna immediately reprocess the claim. (Compl., Exh. E). It also requested that if Aetna decided not to pay additional benefits, it provide a written explanation as to its decision. (*Id.*)

Nearly three weeks later, in a letter dated March 20, 2017, University Spine sent Aetna a notice of appeal. (Compl. ¶ 9)(citing Exh. E). In the letter, University Spine once again requested that the claim be reprocessed for additional payment, and asked Aetna to provide "a written explanation citing applicable policy language," pursuant to 29 C.F.R. § 2560.503-1, within 30 days if it denied the additional payment. (Compl., Exh. E). In the Complaint, University Spine alleges that it "requested, among other items, a copy of the Summary Plan Description, Plan Policy, and identification of the Plan Administrator/Plan Sponsor." (Compl. ¶ 10)(citing Exh. E).

By letter dated May 10, 2017, Aetna informed University Spine that it

4

was upholding its original benefits determination. (Notice of Removal, Exh. F). It explained that the reimbursement of University Spine's claim was based upon a reasonable and customary charge. (*Id.*)

According to University Spine, Aetna failed to provide it with a copy of the documents it had previously requested. (Compl. ¶ 11).

On or about August 30, 2017, University Spine filed this action in the Superior Court of New Jersey, Law Division, Passaic County. (Compl.)

## II. Legal Standards

### A. 12(b)(6) Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

5

*Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

### B. Extrinsic Documents

The parties have attached and cited certain documents extrinsic to the complaint. Faced by extrinsic documents, a court may upon proper notice convert the motion to dismiss into a motion for summary judgment. *See* FED. R. CIV. P. 12(d). Even without converting the motion to one for summary judgment, however, the court may consider certain extrinsic documents, even on a motion to dismiss:

> "In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Both sides have attached a number of documents. There appears to be no dispute as to their authenticity, and they are all attached to the Complaint or central to the allegations. I will therefore consider them as appropriate.

As Exhibit 1 to its Notice of Removal, Defendant Aetna attached a copy of the state court Complaint and Exhibits A through G to the Complaint. (ECF no. 1-1, Exh. 1). These exhibits are integral to the Complaint and may be considered on this Rule 12(b)(6) motion, in that they set forth the basis of the

6

claim for reimbursement of fees, the appeal process, and the reasonable and customary rates paid by Aetna:

> Exh. A- Operative Report from Robert Wood Johnson University Hospital Rahway
>
> Exh. B- University Spine Center's Notice of Privacy Practices, Assignment of Benefits form
>
> Exh. C-Health Insurance Claim Form prepared by University Spine and submitted to Aetna
>
> Exh. D- Aetna remittance advice form
>
> Exh. E- Letter dated March 20, 2017 from University Spine Center to Aetna's Director of Claims, and letter dated February 28, 2017 from University Spine Center to Aetna's Director of Claims
>
> Ex. F- Letter dated May 10, 2017 from Aetna to University Spine Center
>
> Exh. G- Fair Health medical benchmarks data

(ECF no. 1-1).[4]

Aetna also submitted one exhibit in connection with its Rule 12(b)(6) motion, a copy of the Choice POS II medical benefit plan booklet "prepared exclusively for Genesis Healthcare" ("the Plan"). (ECF no. 3-4, Exh. 1). The Plan contains the very anti-assignment clause raised as a defense by University Spine. For obvious reasons, University Spine cannot be objecting to its consideration.[5]

### III. Discussion

#### A. Assignment of Benefits and Statutory Derivative Standing

Before reaching the merits, I will consider Aetna's claim that University Spine does not have standing to pursue its ERISA claims.

---

[4] Exhibit 2 to Aetna's Notice of Removal includes computer-based redacted versions of the Complaint's exhibits (ECF no. 1-1, Exh. 2), which may be considered for the same reason.

[5] I do not discuss exhibits attached for mere convenience, such as pleadings in the case or copies of unpublished opinions.

7

Under Section 502(a) of ERISA, only "a participant or beneficiary" may bring a civil action to recover benefits or enforce rights under the terms of his plan. 29 U.S.C. § 1132(a). However, such a plan beneficiary may confer a derivative right to sue upon a health care provider *via* a valid assignment. *N.J. Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015); *American Chiropractic Ass'n v. American Specialty Health Inc.*, 625 F. App'x 169, 175 (3d Cir. 2015); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). By assignment, the provider stands in the shoes of the participant or beneficiary who is its patient.

In this case, University Spine claims to be suing Aetna in its derivative capacity as L.K.'s assignee. (Compl. ¶¶ 26, 32). The Assignment states that "I [the patient . . . ] assign directly to University Spine Center, all insurance benefits, if any, otherwise payable to me for the services rendered." (Compl. Ex. B). At issue is the scope of the anti-assignment clause in the "Assignments" section of the Plan. It states: "[c]overage and your rights under this **Aetna** medical benefits plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding." (ECF no. 3-4, Exh. A at 59) (emphasis in original).

University Spine says that L.K.'s assignment of "benefits" is not barred by the anti-assignment clause, which explicitly prohibits only the assignment of "'[c]overage and your rights'" under the Plan. (Pl. Brf. at 3)(citing ECF no. 3-4, Exh. A at 59). "Coverage" and "rights," says University Spine, are not defined in the Plan's glossary, but in any event are not synonymous with "benefits." (*Id.* at 3)(citing ECF no. 3-4, Exh. A at 1-6, 71-89). Aetna asserts that the anti-assignment clause in the Plan "clearly and unequivocally precluded the patient from assigning its benefits to University Spine." (Def. Brf. at 6). "Coverage," as that term is used in the Plan and the anti-assignment clause, is synonymous with "benefits" in Aetna's view. (Def. Reply 2).

8

The anti-assignment clause appears on its face to limit the prohibition of assignments to only coverage and rights. In some tension with that language is the following sentence, which states that a direction to pay a provider is not an assignment of rights.[6] The claimed equivalence between "coverage" and "benefits," too, merits factual development.

The interpretation of the anti-assignment clause is not so clear and unambiguous as a matter of law as to permit resolution on a motion to dismiss. The motion to dismiss is therefore denied without prejudice to renewal of those contentions on summary judgment.

---

6    The relationship between a "direction to pay" and an "assignment of benefits" is unexplored.

University Spine also presents a policy-related argument. Relying on a 26-year-old decision from the United States Court of Appeals for the Fifth Circuit, it argues that the anti-assignment clause is "inapplicable" because it cannot be used to frustrate a healthcare provider's ability to recover payment "from the plan whose very purpose is to provide payment to such providers." (Pl. Brf. 5)(citing *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992), *overruled on other grounds*, Access *Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012)). In *Hermann*, the Fifth Circuit found that an anti-assignment clause, even if generally applicable, should not apply to an assignee who "is the provider of the very services which the plan is maintained to furnish." 959 F.2d at 575.

I find that University Spine's reliance on *Hermann* is misplaced. As I have previously recognized, *Hermann* "is not binding and has otherwise been limited." *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of New Jersey*, 262 F. Supp. 3d 105, 111 (D.N.J. 2017). See *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002)(cautioning that *Hermann* does not "stand for the proposition that all anti-assignment clauses are *per se* invalid vis-à-vis providers of health care services.") Notably, New Jersey has declined to invalidate anti-assignment clauses as a policy matter. *Kaul v. Horizon Blue Cross Blue Shield*, No. CV 15-8268, 2016 WL 4071953, at *2 (D.N.J. July 29, 2016)(citing *Advanced Orthopedics*, 2015 WL 4430488, at *5 (D.N.J. July 20, 2015)); *Somerset Orthopedic Assocs. v. Horizon Blue Cross & Blue Shield of N.J.*, 345 N.J. Super. 410, 423, 785 A.2d 457 (App. Div. 2001) (holding "the anti-assignment clause in Horizon's subscriber contracts is valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without Horizon's consent"). Accordingly, given that University Spine's policy-related argument is contrary to applicable precedent, I find no basis to invalidate Aetna's anti-assignment clause based on public policy.

Notwithstanding my rejection of those arguments, for the reasons explained in this opinion, I deny University Spine's motion to dismiss as to the standing issue.

9

### B. Waiver

University Spine argues in the alternative that even if the anti-assignment clause is enforceable, Aetna has waived enforcement of the clause through a course of direct dealing with University Spine. (Pl. Brf. 6). University Spine asserts that Aetna did not raise any issue about University Spine's right to engage in payment-related processes when responding to University Spine's actions as L.K.'s assignee. (*Id.*) In particular, 1) Aetna submitted a partial payment to L.K. based on University Spine's Health Insurance Claim Form[7], and 2) Aetna processed University Spine's appeal without mentioning the anti-assignment clause and invited University Spine to further appeal Aetna's decision. (*Id.*)(citing ECF no. 5-4, Exh. C).

Under New Jersey law, a party may waive an anti-assignment clause "by a written instrument, a course of dealing, or even passive conduct, *i.e.*, taking no action to invalidate the assignment *vis-a-vis* the assignee." *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.*, 305 N.J. Super. 510, 524 (App. Div. 1997), *certif. denied*, 153 N.J. 50 (1998). "Waiver is the voluntary and intentional relinquishment of a known right." *Knorr v. Smeal*, 178 N.J. 169, 177 (2003)(citation omitted). Therefore to prove waiver, "it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them." *Shebar v. Sanyo Bus. Corp.*, 111 N.J. 276, 291 (1988). The intent to waive "need not be stated expressly, but may be spelled out from a state of facts exhibiting full knowledge of the circumstances

---

[7] University Spine attaches a letter dated March 10, 2017 sent from Aetna to University Spine. (ECF no. 5-4, Exh. C). The letter states, in relevant part:

> [f]ollowing our review, we have determined that this member's group benefits coverage allows $4392.02 An amount of $2196.02 was applied towards coinsurance, which is the member's responsibility.
>
> Our records indicate that we processed this claim according to the provisions of this member's plan. On 02-21-2017, we paid these services according to the plan contract.

(*Id.*) Whether or not the letter is properly sponsored and submitted on this motion to dismiss, it suggests that the issue might profitably be explored on summary judgment.

producing a right and continuing indifference to exercise of that right." *Merchants Indem. Corp. v. Eggleston,* 68 N.J. Super. 235, 254 (App. Div. 1961). *See also Knorr,* 178 N.J. at 177 (citing *Merchants Indem. Corp.,* 68 N.J. Super. at 254)(stating that "[t]he intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference.")

Waiver, as the above authorities imply, will often pose issues of fact. *See Shebar,* 111 N.J. at 291 (stating that questions of waiver are questions of intent, which are factual determinations). The Complaint and its exhibits lend some plausible support to such a waiver theory, however. The Complaint states that University Spine prepared a Health Insurance Claim Form formally demanding reimbursement from Aetna for the services rendered to L.K., and that in response Aetna "allowed reimbursement totaling $4,392.02." (Compl. ¶¶ 7, 8)(citing Exhs. C & D). It also states that University Spine engaged in Aetna's appeal process, and also requested certain documents. (*Id.* at ¶¶ 9, 10)(citing Exh. E). The Complaint implies that Aetna processed University Spine's appeal, ultimately denying it. (*Id.* at ¶ 11)(citing Exh. F). By letter dated May 10, 2017, Aetna explained to University Spine that its reimbursement was based upon a reasonable and customary charge. (Compl., Exh. F).

Neither party discusses a remittance advice form attached to the Complaint. That form, however, seems to indicate a February 24, 2017 direct payment from Aetna to University Spine. (Compl., Exh. D). Aetna is identified as the payor, and University Spine is identified as the payee (*Id.*) This evidence, too, could be used to support a waiver argument.[8]

---

[8] Attached to University Spine's opposition brief is a letter dated March 10, 2017 sent from Aetna to University Spine. (ECF no. 5-4, Exh. C). It contains Aetna's initial decision and invites University Spine to file an appeal if it does not agree:

> Following our review, we have determined that this member's group benefits coverage allows $4392.02 An amount of $2196.02 was applied towards coinsurance, which is the member's responsibility.

11

At this preliminary stage, I find that waiver is adequately suggested by the allegations of the Complaint and cannot be set aside as a matter of law at this stage. Whether the anti-assignment Clause was indeed waived by a course of dealing is an issue that may be further explored in discovery. *See Shah v. Horizon Blue Cross Blue Shield of New Jersey*, No. 117CV00166NLHJS, 2017 WL 4284470, at *3 (D.N.J. Sept. 27, 2017); *Atl. Orthopaedic Assocs., LLC v. Blue Cross*, No. 15-CV-1854 (KM), 2016 WL 889562, at *5 (D.N.J. Mar. 7, 2016).

### C. Breach of Fiduciary Duty under ERISA

Relying on *Varity Corp. v. Howe*, 516 U.S. 489 (1996), Aetna maintains that Count III, breach of fiduciary duty under ERISA, should be dismissed because it is duplicative of Count II, failure to make all payments pursuant to member's plan under ERISA. (Def. Brf. 15-17). Aetna emphasizes that University Spine asserts the same injury in both Counts, and also seeks the same relief in both counts. (*Id.* at 15, 17). (*See* Compl., text following ¶ 31, text following ¶ 40).

To state a claim for breach of fiduciary duty under an ERISA plan, University Spine must plausibly allege three elements: that the defendant was a fiduciary under the Plan, that the defendant breached a fiduciary duty, and that the breach harmed University Spine. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). Here, Count III alleges that Aetna was acting as a fiduciary when it denied payment for L.K.'s medical bills and responded to University Spine's administrative appeals. (Compl. ¶ 39). In particular, it alleges that Aetna acted as a fiduciary because "among other reasons, [Aetna] acted with discretionary authority or control to deny the

---

> Our records indicate that we processed this claim according to the provisions of this member's plan. On 02-21-2017, we paid these services according to the plan contract.

(*Id.*) *See also* (Notice of Removal, Exh. E)(including a February 28, 2017 letter from University Spine to Aetna which acknowledges receipt of payment and states that the claim paid $2,196.02).

12

payment and to manage the administration of the employee benefit plan at issue [.]" (*Id.*) According to University Spine, Aetna breached its fiduciary duties by 1) failing to issue an Adverse Benefit Determination; 2) "participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; 3) failing to make reasonable efforts to remedy the breach of the other fiduciary; and 4) wrongfully withholding money belonging to University Spine. (*Id.* at ¶ 40). The prayer for relief requests, in part, an order directing Aetna to pay $133,320.98, the allegedly unpaid balance of benefits due under the terms of the Plan. (*Id.*, text following ¶ 40).

In *Varity*, the United States Supreme Court stated that § 502(a)(3) is a "catchall" provision that allows "appropriate equitable relief for injuries caused by [ERISA] violations that § 502 does not elsewhere adequately remedy." 516 U.S. at 512. However, as I have previously recognized, I do not believe that *Varity* precludes the assertion of Counts II and III at the pleading stage. *See Masri v. Horizon Healthcare Servs., Inc.*, No. CV166961KMJBC, 2017 WL 4122434, at *5-6 (D.N.J. Sept. 18, 2017); *Atl. Orthopaedic Assocs., LLC*, 2016 WL at *6. *See also Shah v. Horizon Blue Cross Blue Shield*, Civ. No. 15-8590, 2016 WL 4499551 at *10 (D.N.J. Aug. 25, 2016). A plaintiff may plead in the alternative, or plead causes of action against parties who may be jointly or solely liable. *See generally* Fed. R. Civ. P. 8(d). Without a more developed factual record, it is too early to identify if either Count or neither Count is proper.

I will therefore deny the motion to dismiss Count III for failure to state a claim.

## IV.   Conclusion

For the reasons set forth above, Aetna's motion (ECF no. 3) to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**. An appropriate order will issue.

                                                    **KEVIN MCNULTY, U.S.D.J.**

Date:  March 20, 2018